FORET, Judge.
Ronald Venable (appellee) brought this tort action to recover damages for personal injuries he sustained in an automobile collision. Defendants are Adeline Credeur, the driver of the other car, and her automobile liability insurer, Trinity Universal Insurance Company of Kansas (Trinity). St. Paul Fire & Marine Insurance Company (St. Paul), appellee’s uninsured motorist insurer, was also made a defendant.
St. Paul filed separate third party demands against Adeline Credeur and Trinity.
By stipulation of the parties, the only issue before the trial court was the extent of appellee’s recovery for general damages, which the trial court set at $23,500.00.
Adeline Credeur and Trinity appeal from the trial court’s judgment. The sole issue is whether the trial court abused its “much discretion” in assessing the amount of general damages awarded appellee.
FACTS
Appellee alleges that a 1975 Buick, owned and being operated in a negligent manner by Adeline Credeur, collided with his automobile, causing him serious personal injury. The accident occurred in Lafayette, Louisiana, on August 30, 1978.
St. Paul instituted a third party demand against Adeline Credeur and sought to hold her liable to it for any sums it might be condemned to pay appellee, which would be in excess of the policy limits of her insurer, Trinity. St. Paul also instituted a third party demand against Trinity, alleging that it was acting arbitrarily and capriciously in refusing to settle this case within its policy limits, after appellee had offered to do so. St. Paul further alleged that Trinity was acting in bad faith in refusing to accept this offer and that Trinity was negligently exposing it to liability for a judgment, which might be rendered in excess of Trinity’s policy limits.
The parties entered into a stipulation, prior to trial, in which they agreed to the following: First, that the accident was caused solely by the negligence of Adeline Credeur. Second, that Trinity provided coverage, up to its policy limits of $25,-000.00, and that St. Paul provided coverage, up to its policy limits of $10,000.00, for any judgment rendered in excess of $25,000.00. Third, that appellee had incurred special damages of $1,246.48. Finally, that appel-lee would reduce his demand to $35,000.00 and, in return, would be allowed to enlarge his pleadings to include damages for disability and loss of earning capacity. Thus, the only issue before the trial court was the amount of appellee’s recovery for general damages.
*314 This action was tried and the trial court rendered judgment awarding appellee $23,-500.00 for general damages. The trial court dismissed the third party demands of St. Paul, as its judgment was below Trinity’s policy limits. Adeline Credeur and Trinity (appellants) were granted a suspensive appeal from the trial court’s judgment.
QUANTUM
LSA-C.C. Article 1934(3) provides that, in the assessment of general damages, “much discretion” must be left to the trial judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979).
The Louisiana Supreme Court, in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), stated, on page 335:
“We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., supra; Bitoun v. Landry, supra; Fox v. State Farm Mutual Automobile Ins. Co., supra; Walker v. Champion, supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.”
Appellants contend that the trial court’s award of $23,500.00 to appellee for general damages is clearly excessive and constitutes an abuse of that court’s “much discretion” in assessing such damages.
We have attached our analysis of the facts and circumstances regarding appellee and his injuries to this opinion, as an appen-' dix. That analysis leads us to the following conclusions: First, appellee experienced no problems with his back prior to the accident. Second, appellee has been experiencing chronic back pain since the accident, and is being prescribed the narcotic “Perco-dan” in an attempt to secure relief from that pain. Third, appellee has experienced a problem with his right leg since the accident, which causes that leg to give way infrequently. Fourth, that the back pain and problem with appellee’s right leg resulted from the accident. Finally, that ap-pellee has suffered a permanent, partial disability of 20% of his body, as a whole, and that 5% to 6% of that disability is attributable to a pre-existing condition, which was aggravated by the accident.
In an appellate review of a trial court’s award for general damages, the initial inquiry must always be directed at whether the award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s “much discretion” in the award of damages. Reck v. Stevens, supra.
It is our determination that the trial court’s award of $23,500.00 for general damages does not constitute a clear abuse of that court’s “much discretion”. The cases cited by appellants in their attempt to show the excessiveness of the trial court’s award are not “closely similar” in their facts and circumstances to this case.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.
APPENDIX
The record contains the following information concerning the appellee and his injuries. Appellee was 19 years old at the time of the accident. He testified that he experienced a stinging sensation in the lower area of his back immediately after the accident. He visited his family physician, Dr. Jacob Segura, Jr., that afternoon, as the stinging sensation in his back was persist *315 ing. Dr. Segura is a general practitioner in Rayne, Louisiana. He testified that appel-lee complained of pain in his neck and back and that he prescribed muscle relaxants and pain killers. He also testified that, to his knowledge, appellee had no prior problems with his back. He was of the opinion that the accident was the cause of appellee’s injuries. Dr. Segura sent appellee to Dr. D. F. Overdyke, an orthopedic surgeon practicing in Shreveport, Louisiana, when appellee continued to complain of back pain and headaches. Dr. Segura deferred to the opinion and evaluation of Dr. Overdyke as to appellee’s condition.
Dr. Overdyke examined appellee three times. The first was on November .16,1978, some three months after the accident. It was at this examination that appellee related to Dr. Overdyke the facts surrounding the accident and the injuries he suffered. Dr. Overdyke stated that appellee’s main complaints were pain in his neck and low back. Dr. Overdyke performed a neurological examination which revealed the presence of some pain when appellee tried to move his extremities or torso in certain ways. X-ray studies were performed and were negative for fracture, dislocation, or subluxation. However, these studies did reveal the presence of a condition known as reverse spondylolisthesis. Dr. Overdyke’s diagnosis was that appellee had sustained a cervical and lumbar myoligamentous sprain with some evidence of sciatic root irritation on the right. Appellee was fitted with a surgical support and was advised to do only light work.
Dr. Overdyke next examined appellee on December 28, 1978, and ordered certain tests run on him in an effort to determine the cause of the back pain, which appellee was still complaining of. His conclusion was that appellee was suffering from an extreme right lateral protrusion of an inter-vertebral disc. Dr. Overdyke advised appel-lee that if he could not live with the condition of his back, then surgery was the only alternative. Appellee was advised to take several weeks before making a decision since his condition was not acute at the time.
Dr. Overdyke last examined' appellee on August 27, 1979, approximately one year after the accident and stated that appellee was still complaining of pain in his back. Dr. Overdyke testified that he had no cause to doubt the legitimacy of appellee’s complaints. Tests run on the appellee at this time suggested that some healing had taken place in his back. Dr. Overdyke emphatically stated that he would not perform surgery on appellee unless his present condition deteriorated significantly. It was Dr. Overdyke’s opinion that appellee would continue to have problems with his back in the future, and he assigned a permanent 20% disability to the body as a whole. Also, Dr. Overdyke stated that appellee would have to restrict himself to light work for the rest of his life but could continue to work in his father’s store.
Dr. Overdyke testified, under cross-examination, that reverse spondylolisthesis is a developmental problem, which formed as appellee grew through adolescence. In effect, it was a pre-existing condition. He stated that this alone was enough to restrict appellee to light work for the rest of his life. However, he assigned only 5% to 6% of the 20% permanent disability to the body as a whole as resulting from this pre-exist-ing condition. Dr. Overdyke felt that based on what appellee had told him and his examinations, this pre-existing condition had been aggravated by the accident.
Appellee also made two visits to Dr. John Olivier of Lafayette, Louisiana, at the request of appellants, and one visit to a Dr. Mayer of Opelousas, Louisiana. However, neither of these doctors testified at the trial of this matter.
Appellee testified that he never had any problems with his back prior to the accident. He related a history of chronic back pain since then and stated that his right leg would buckle every now and then. He also related problems of inability to sleep and an inability to perform strenuous tasks, together with the need for frequent rest periods while working. Appellee testified that he is taking the narcotic “Percodan” in an *316 effort to secure relief from the chronic pain. Appellee works in his father’s store and has been able to continue doing so on a somewhat restricted basis.
Elaine Venable, appellee’s wife, testified that she knew of no problems that appellee had with his neck or back during the time that they had been married, but prior to the accident. She stated that she has seen ap-pellee’s right leg give way and that he constantly complains of pain since the accident.
Preston Venable, appellee’s father, testified that he knew of no problems that ap-pellee had with his back or neck prior to the accident. He stated that appellee can do only light work around the store and that appellee complains of pain and fatigue.